IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**MARY DURSTEIN,**

    **Plaintiff,**

v.                                                                   Case No. 3:19-cv-00029
                                                                 Honorable Robert C. Chambers

**TODD ALEXANDER; BOARD OF EDUCATION,**
Cabell County Schools; **STATE SUPERINTENDENT**
**OF SCHOOLS,** West Virginia Department of
Education,

    **Defendants.**

**STATE SUPERINTENDENT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO ALTER, AMEND JUDGMENT OF**
**DISMISSAL UNDER RULE 59(e) of FED. R. CIV. PROCEDURE**

    Comes now the Defendant, State Superintendent of Schools, by counsel, Kelli D. Talbott, Senior Deputy Attorney General, and submits this Memorandum of Law in Opposition to Plaintiff's Motion to Alter, Amend Judgment of Dismissal Under Rule 59(e) of Fed. R. Civ. Procedure.

**I.**

**INTRODUCTION**

    At the time that the Plaintiff instituted this action, it was not disputed that the State Superintendent of Schools had notified the Plaintiff that he was reviewing the facts and circumstances which gave rise to the Plaintiff's termination from employment with the Cabell County Board of Education to determine whether he should institute action against her teaching

certification under West Virginia Code § 18A-3-6. (Compl. ¶¶ 46, 47, 48 and Ex. 13, ECF No. 1, 1-13.) This notification by the State Superintendent to the Plaintiff served as the defining basis upon which the Plaintiff alleged that she was entitled to an exercise of this Court's jurisdiction over her "as applied" First Amendment claim against the Superintendent with regard to West Virginia Code § 18A-3-6. (Compl. ¶¶ 46, 47, 48, 76, 77, ECF No. 1, 1-13.) The notification of investigation was the alleged "harm" that the Plaintiff asserted was the basis of her injury for which she was seeking redress from this Court. (*Id.*)

In response to the initial Complaint, the State Superintendent of Schools filed a Motion to Dismiss and Memorandum in Support thereof. (ECF Nos. 12 and 13.) At that time, the State Superintendent argued, in part, that the Plaintiff had failed to meet the case or controversy requirements of Article III, § 2 of the United States Constitution insofar as she had failed to state a concrete, particularized, and actual or imminent injury attributable to the State Superintendent. (Mem. of Law at 6-8, ECF No. 13.)

Subsequently, having had the benefit of reviewing the State Superintendent's argument in this respect, the Plaintiff filed an Amended Complaint. (ECF No. 20.) The Amended Complaint added a claim in which it was alleged that West Virginia Code § 18A-3-6 is unconstitutional on its face. (Am. Compl. ¶ 104, ECF No. 20.) However, the Plaintiff made no further factual allegations in her amendments that described any purported injury that supported her standing to make either an "as applied" challenge or a facial challenge. Simply put, the notification of investigation was the factual predicate upon which Plaintiff's Amended Complaint continued to be based.

In response to the Amended Complaint, the State Superintendent filed another Motion to Dismiss and Memorandum in Support thereof. (ECF Nos. 24 and 25.) The State Superintendent

continued to argue, in part, that the Plaintiff's Amended Complaint did not meet the case or controversy requirements of Article III, § 2 of the United States Constitution insofar as she had failed to state a concrete, particularized, and actual or imminent injury attributable to the State Superintendent. (Mem. of Law at 3-4, ECF No. 25.)

In her response to the State Superintendent's second motion to dismiss, the Plaintiff sought to make new factual allegations that would purport to give her an "injury" to make a facial challenge to the statute. In essence, the Plaintiff argued that the mere existence of the statute caused her to refrain from commenting on social media. (Pl.'s Mem. of Law at 7 and Ex. 19, ECF Nos. 36 and 36-2.) None of these assertions were contained in Plaintiff's Complaint or Amended Complaint.

In his reply, the State Superintendent pointed out that the Plaintiff was effectively attempting to amend her complaint in her response inasmuch as none of these allegations were pled in her Complaint or Amended Complaint. (Mem. of Law in Reply at 8-10, ECF No. 46.) The State Superintendent urged this Court to reject this impermissible attempt to remedy deficiencies in Plaintiff's complaint through assertions in a brief. (*Id.*) In the aftermath of that, the Plaintiff did not seek to make further amendments to her complaint through written consent or with this Court's leave pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.

On June 14, 2019, this Court entered an Order staying discovery and further scheduling pending rulings on the parties' motions to dismiss. (ECF No. 55.) On June 24, 2019, the United States Supreme Court issued a decision in *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019). *Iancu* is the case that the Plaintiff now cites as "new" law justifying the granting of her Rule 59(e) motion so that she can amend her complaint to assert theories and claims to support her facial challenge to West Virginia Code § 18A-3-6 and her standing to make such a challenge. It is undeniable, however, that

in the immediate wake of its issuance, the Plaintiff filed nothing with this Court to draw its attention to the *Iancu* decision.  And, nothing in this Court's June 14, 2019 discovery/scheduling stay order precluded the Plaintiff from doing so.  In short, the Plaintiff failed to ask the Court to allow her to amend her complaint based upon the *Iancu* decision; failed to ask the Court to refrain from ruling on the motions to dismiss so that she could have leave to address *Iancu*; and/or, failed to take *any* action to cause this alleged important development to be drawn to the Court's and the parties' attention so that it could be addressed before this matter progressed.

On December 13, 2019, this Court dismissed Plaintiff's claims against the State Superintendent based upon *Younger* abstention and did not reach the case or controversy argument raised by the State Superintendent. (ECF 56.)  Subsequent to this Court's ruling, an attorney for the State Superintendent notified the Plaintiff that the investigation into possible action against her certification had been closed without any action against her certification. (ECF No. 57-1.)

The Plaintiff now moves, under Rule 59(e) of the Federal Rules of Civil Procedure, to have this Court vacate its order and allow her to amend her complaint to "update the legal theory" upon which she bases her facial challenge and to "aver components that address her standing" to make a facial challenge.  (Mem. in Support at 7, ECF No. 58.)  Plaintiff contends that the State Superintendent's closure of the investigation is "new evidence" and that the United States Supreme Court's decision on June 24, 2019 in *Iancu* is a new, controlling law that warrants the granting of her motion.  (*Id.*)

For the reasons set forth hereinafter, the State Superintendent opposes Plaintiff's motion inasmuch as Plaintiff does not satisfy the standard to warrant the extraordinary remedy she now seeks from this Court.

4

II.

**STANDARD FOR RULE 59(e) MOTION**

The Fourth Circuit Court of Appeals has held that "reconsideration of a judgment after entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1, at 124 (2d ed. 1995)). There are only three narrow circumstances under which a judgment may be amended under Rule 59(e): 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; and, 3) to correct clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Importantly, Rule 59(e) motions cannot be used to raise arguments which could have been raised prior to the issuance of the judgment, nor to argue a case under a legal theory that the party had the ability to address in the first instance. *Pac. Ins. Co.*, 148 F.3d at 403.

Relief on the basis of new evidence not available at trial requires the moving party to demonstrate that: 1) the evidence is newly discovered since judgment was entered; 2) that due diligence was exercised to discover the new evidence; 3) the evidence is not merely cumulative or impeaching; 4) the evidence is material; and, 5) the evidence is such that it is likely to produce a new outcome if the case is re-tried or is such that would require that the judgment to be amended. *Boryan v. United States*, 884 F.2d 761, 771 (4th Cir. 1989) (quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)).

Relief on the basis of a change in controlling law requires more than a confirmation of existing law. Such confirmation is not tantamount to a change in controlling law for purposes of ruling on a Rule 59(e) motion. *Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563 (5th Cir.

2003); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216 (D. Ariz. 2012). A change in controlling law results where a subsequent decision creates a significant shift in a court's analysis. *Backstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL 177907 at *2 (E.D. Cal. Jan. 19, 2007); *Teamsters Local*, *supra*.

As will be discussed in this Memorandum, the Plaintiff does not meet the standard required for a successful Rule 59(e) motion. Therefore, the Plaintiff's motion must be denied.

### III.

### ARGUMENT

A. **THE STATE SUPERINTENDENT'S DISMISSAL OF THE INVESTIGATION INVOLVING THE PLAINTIFF IS NOT NEWLY DISCOVERED EVIDENCE WARRANTING THE GRANTING OF PLAINTIFF'S RULE 59(e) MOTION.**

Plaintiff seeks to characterize the State Superintendent's dismissal of the certification investigation as "newly discovered evidence" that she wants to present to her benefit if this Court will vacate its ruling, allow her to amend her complaint, and let her facial challenge to the state certification statute proceed. While the dismissal of the investigation may bear narrowly upon the question of whether abstention is justified in this case, it hardly constitutes "newly discovered evidence" that warrants a reconsideration of this Court's order or the allowance of the Plaintiff's request to amend her Amended Complaint. The State Superintendent's dismissal of the investigation is, in fact, the antithesis of "newly discovered evidence." It is the absence of evidence upon which the Plaintiff may base a continuing, viable complaint in this matter.

To illustrate the point, the Plaintiff does not seek to introduce evidence that existed prior to the entry of this Court's order that was just discovered and that would constitute new factual

allegations of adverse action by the State Superintendent to bolster her First Amendment claims. Instead, she seeks to shoehorn the complete dismissal of certification proceedings against her into a "new evidence" rubric in which it does not fit.

As stated above, the "newly discovered evidence" criterion that pertains to Rule 59(e) relief requires that the "new evidence" be material. *Boryan* at 771. But, the obvious question is, material to what? How is the State Superintendent's closure of the investigation, with absolutely no action against Plaintiff's teaching certification, material to whether or not she may maintain a facial constitutional challenge to the statute or material so as to justify the granting of leave to amend her complaint? It is not.

Surely, the Plaintiff does not wish to merely amend her complaint to say that the State Superintendent dismissed all proceedings against her and leave her facial challenge predicated on that. She obviously wishes to try to use the "new evidence" fallacy to gain an opportunity to assert additional factual predicates for a facial challenge. Such is not contemplated under the factors set forth in *Boryan*.

*Boryan* clearly requires that the granting of Rule 59(e) relief must be based upon newly discovered evidence that is material to the actual claim that the plaintiff desires to keep alive before the Court. Moreover, as will be discussed hereinafter in this Memorandum, any facts that Plaintiff now wants leave to amend into her complaint to support her standing for a facial challenge, could have been put in her Complaint or Amended Complaint prior to this Court's December 13, 2019 order.

    **B.    THE PLAINTIFF SHOULD NOT BE PERMITTED TO USE THE STATE SUPERINTENDENT'S DISMISSAL AS THE BASIS TO ASSERT FACTS TO SUPPORT HER FACIAL CHALLENGE WHEN SUCH FACTS COULD HAVE BEEN RAISED PRIOR TO THE ENTRY OF THE DECEMBER 13, 2019 ORDER.**

As set forth above, a Rule 59(e) motion cannot be used to raise arguments which could have been raised prior to the issuance of the judgment, nor to argue a case under a legal theory that the party had the ability to address in the first instance. *Pac. Ins. Co.*, 148 F.3d at 403. It appears that the Plaintiff wants to use the closure of the State Superintendent's investigation to go back and amend her complaint so that she can fix its deficiencies with regard to her factual support for a facial challenge to the state certification statute.

But, as previously noted, the Plaintiff filed an initial Complaint and an Amended Complaint (in which the facial challenge was asserted at ¶ 104); had the benefit of the State Superintendent's responsive arguments that she failed to assert facts that gave her an injury to support standing/ripeness for both an "as applied" challenge and a facial challenge; and, took no action to seek to further amend her complaint to address the matter. Again, it defies logic that the Plaintiff merely wants leave of this Court now to go back and amend her complaint solely to assert that the certification investigation has been dismissed under the "new evidence" category. This fact doesn't bolster Plaintiff's standing, it dramatically defeats it.

In the event that there is other "new evidence" out there that the Plaintiff wants to have this Court consider as justification for setting aside its order and allowing her to amend her complaint to account for it, the Plaintiff does not offer it in her motion. Absent the Plaintiff identifying such other "new evidence," there is no way for the State Superintendent to address whether it meets the

8

standard required for a Rule 59(e) motion discussed above. Presumably, if "new evidence" other than the State Superintendent's dismissal of investigation exists, and has been discovered by the Plaintiff since the Court's order, it would have been described in Plaintiff's Rule 59(e) motion.

What it appears that the Plaintiff wants to do is go back and put things in the complaint that she could have put in before this Court's December 13, 2019 order. As previously discussed, in Plaintiff's response to the State Superintendent's second motion to dismiss, the Plaintiff impermissibly sought to make new factual allegations in a brief that would purport to give her an "injury" to make a facial challenge to the statute. In essence, the Plaintiff argued that the mere existence of the statute caused her to refrain from commenting on social media. (Pl.'s Mem. of Law at 7 and Ex. 19, ECF Nos. 36 and 36-2.) However, none of this was actually asserted in Plaintiff's Complaint or Amended Complaint. And, Plaintiff chose to take no action to seek this Court's leave to put it in before the Court's ruling.

Plainly, these allegations of "refraining from commenting on social media" could have been put in Plaintiff's complaint before now.[1] The fact that the Plaintiff raised these allegations in a brief filed with this Court well before the Court ruled, demonstrates that they were unequivocally known to her before the Court ruled. Because it is not permissible for the Plaintiff to go back now and assert arguments or facts that could have been raised prior to the Court's ruling, this Court must deny

---

[1] The State Superintendent does not in any way concede that even if these allegations are allowed to be amended into Plaintiff's complaint that she will have standing and/or that this case will be ripe for the Court to adjudicate a facial challenge to the statute. The State Superintendent reserves the right to file another motion to dismiss if this Court sets aside its order, allows the Plaintiff to amend her complaint, and such amendments fail to reach the standard required for the Plaintiff to continue to maintain this action.

Plaintiff's Rule 59(e) motion. The Plaintiff has effectively waived these claims. In sum, the Plaintiff wants another bite at the apple which this Court should not permit.

> C. **NOTHING IN THE *IANCU* DECISION ESTABLISHES NEW, CONTROLLING LAW ON THE ISSUE OF THE REQUISITES FOR STANDING TO ASSERT A FACIAL CONSTITUTIONAL CHALLENGE TO A STATUTE.**

In *Iancu*, the plaintiff sought to register the trademark "FUCT" with the United States Patent and Trademark Office. The Lanham Act, however, prohibited the registration of trademarks consisting of or comprising immoral or scandalous matter. The plaintiff's trademark application was denied on that basis. Thereafter, the plaintiff brought a First Amendment challenge to invalidate the statute. Evidence was introduced not only related to the denial of the plaintiff's trademark application, but of other trademark applications that were denied based upon the "immoral or scandalous" prohibition. The United States Supreme Court's decision revolved around the constitutionality of the statute.

At no time did the Supreme Court comment or issue a holding on the plaintiff's standing to bring the First Amendment challenge. It may reasonably be presumed that the Court did not, because the plaintiff's trademark application *was denied* based upon the statute; other trademark applications *had been denied* based upon the statute; and, therefore, there was no question that the plaintiff had been harmed and had standing to bring suit.

The plaintiff's standing in *Iancu* was just simply not an issue. In contrast, in this case, no action was taken against Plaintiff's certification and there is no assertion that the State Superintendent has taken action against anyone else based upon the same or similar circumstances

which gave rise to Plaintiff's termination from employment. Plaintiff's standing in this case clearly is an issue.

Plaintiff's motion seeks leave to amend her complaint to "update the legal theory" upon which she bases her facial challenge and to "aver components that address her standing" to make a facial challenge. (Mem. in Support at 7, ECF No. 58.) In support, she cites *Iancu* as grounds to make such amendments. (*Id*.) Yet, there is absolutely nothing in *Iancu* that breaks new, controlling law on the components for standing or a new legal theory on standing. *Iancu* is a straightforward case solely on the issue of the constitutionality of the statute in question in a scenario where the harm or injury was uncontested.

It bears repeating once more, then, that Rule 59(e) motions cannot be used to raise arguments which could have been raised prior to the issuance of the judgment, nor to argue a case under a legal theory that the party had the ability to address in the first instance. *Pac. Ins. Co.*, 148 F.3d at 403. Since nothing in *Iancu* breaks new law on the components of or legal theories pertaining to standing, it simply does not serve as a legitimate basis for this Court to allow the Plaintiff to go back and amend her complaint as to standing. Any standing legal theories or components that the Plaintiff has, could have, and should have, been raised well before this Court entered its December 13, 2019 order.

In addition, it is important to recognize that the decision in *Iancu* was issued ten days after this Court entered its discovery/scheduling stay order to allow the parties' motions to dismiss to be addressed, and almost six months before this Court issued the order that the Plaintiff now seeks to have set aside. The Plaintiff presents no reason in her motion as to why she failed to bring *Iancu* to

the Court's and the parties' attention after it was decided, but before this Court's order was entered. There was clearly ample time to do so.

Assuming *arguendo* that there is anything in *Iancu* that even remotely presents some new development that is relevant to this matter, the Plaintiff should have raised it in a motion or other appropriate filing with this Court before this Court entered its order. The standard for Rule 59(e) motions mandates that such motions cannot be used to raise arguments and/or legal theories that could have been raised prior to judgment. *Pac. Ins. Co.*, 148 F.3d at 403. The Plaintiff could have interjected her desire to address *Iancu* by filing something long before now. Plaintiff's lateness precludes her from doing so at this juncture.

> **D.     *IANCU* DOES NOT CONSTITUTE AN INTERVENING CHANGE IN CONTROLLING LAW.**

For the reasons stated above, *Iancu* is not controlling with regard to Plaintiff's case because the essential issue of standing was not addressed in that case. Plaintiff's standing is a critical matter in this case upon which there is ample, applicable, long-settled case law previously cited in the State Superintendent's Memorandum of Law in support of his Motion to Dismiss (Mem. of Law at 7-8, ECF No. 13.) Because of this critical standing issue, one does not even reach the merits of the constitutionality of the statute, which was the controlling, dispositive issue in *Iancu*.

Setting the standing issue aside, however, at its core the *Iancu* decision does not present a significant shift in the United States Supreme Court's First Amendment analysis of statutory law that is alleged to or that is demonstrated to discriminate on the basis of viewpoint. In fact, the Supreme Court cited its own decision in *Matal v. Tam*, 137 S. Ct. 1744 (2017) in which it held that another part of the Lanham Act, which banned the registration of trademarks that "disparage" any person

living or dead, violated the First Amendment because the ban was viewpoint-based. Citing *Tam*, the *Iancu* Court held that because the Lanham Act's prohibition on the registration of trademarks consisting of or comprising "immoral or scandalous matter" was also viewpoint-based, it was also unconstitutional.

Further, the Supreme Court cited past precedent for what it called the "core postulate of free speech law: The government may not discriminate against speech based on the ideas or opinions it conveys." *Id.* at 2299 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 115 S. Ct. 2510 (1995)). Therefore, while *Iancu* involves a statute that uses the word "immoral," just as West Virginia Code § 18A-3-6 does ("The [S]tate [S]uperintendent may . . . revoke the certificates of any teacher for any of the following causes: Intemperance; untruthfulness; cruelty; immorality . . . ."), the First Amendment analysis in *Iancu* is merely a confirmation of existing law and does not constitute a significant shift in such analysis. Accordingly, it fails to meet the " intervening change in controlling law" factor required for a Rule 59(e) motion to be granted. *See Schiller v. Physicians Resource Group, Inc.*, *supra*; *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, *supra*; and, *Backstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, *supra*.

### IV.
### CONCLUSION

**WHEREFORE**, based upon the foregoing, the State Superintendent of Schools respectfully requests that the Plaintiff's Rule 59(e) motion be **DENIED**.

**WEST VIRGINIA STATE SUPERINTENDENT OF SCHOOLS**
By Counsel

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

*s/Kelli D. Talbott*
**KELLI D. TALBOTT (WVSB #4995)**
**SENIOR DEPUTY ATTORNEY GENERAL**
**812 Quarrier Street, Second Floor**
**Charleston, West Virginia 25301**
**(304) 558-8989 (phone)**
**(304) 558-4509 (fax)**
**Kelli.D.Talbott@wvago.gov**