IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARY DURSTEIN,

        Plaintiff,

v.                                    CIVIL ACTION NO. 3:19-0029

TODD ALEXANDER and
BOARD OF EDUCATION, CABELL COUNTY SCHOOLS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is plaintiff Mary Durstein's Motion for Leave to File Supplemental Complaint, ECF No. 76. For the following reasons, the Court **GRANTS** her Motion.

**I. BACKGROUND**

In her Amended Complaint, Mary Durstein alleges the following facts. ECF No. 20. Durstein worked as a full-time teacher for Cabell County Schools from November 2001 until her termination on March 6, 2017. *Id.* ¶ 4. During the 2016–2017 school year, Durstein taught World Studies at Huntington High School. *Id.* ¶ 5. She operated a Twitter account viewable by the public and often posted about political issues. *Id.* ¶ 17–18. A journalism student at Marshall University gathered several of Durstein's tweets, and the student or a friend of the student shared the tweets with Cabell County Schools and local news organizations. *Id.* ¶ 23.

On January 9, 2017, Huntington High School Principal Jody Cunningham called Durstein into his office to meet with him and Todd Alexander, an assistant superintendent for Cabell County Schools. *Id.* ¶ 21–22, 6. At this meeting, Alexander and Cunningham discussed three of Durstein's

tweets with her. *Id.* ¶ 24. The first, posted on July 16, 2015, is a retweet of conservative commentator Ann Coulter containing a photograph of two men and five women, some of whom are wearing hijabs. *Id.* ¶ 25; ECF No. 20-1. One of the men in the photo is Mohammad Youssuf Abdulazeez, who had opened fire on two military installations in Tennessee. ECF No. 20 ¶ 25. A caption above the photo reads "Deport them." ECF No. 20-1. The second tweet, also from July 16, 2015, states "Who cares if we offend Muslims at least they keep their heads on tact. They're the enemy!" ECF No. 20 ¶ 26; ECF No. 20-2. In the third tweet, posted on May 28, 2016, Durstein responds "Exactly !!!!!!!!!" to a meme calling President Barack Obama a "Muslim douchebag." ECF No. 20 ¶ 28; ECF No. 20-3.

After discussing these tweets, Alexander told Durstein three times to immediately shut down her Twitter account. ECF No. 20 ¶ 29. Cunningham told Durstein to sit at his desk and use his computer to shut down the account. *Id.* ¶ 31. Durstein did not know how to deactivate her account, so another school employee helped her shut it down while Alexander watched. *Id.* ¶ 31–32. Alexander then told Durstein "[y]ou're not to speak to the media" and placed her on administrative leave with pay. *Id.* ¶ 34–35.

On January 24, 2017, the Superintendent of Cabell County Schools suspended Durstein without pay. *Id.* ¶ 42. On March 6, 2017, the Board of Education of Cabell County Schools voted to terminate Durstein. *Id.* ¶ 45; ECF No. 20-12. Durstein appealed, but the West Virginia Education and State Grievance Board upheld her termination on September 22, 2017. ECF No. 20 ¶ 46. On December 11, 2017, Durstein received notice that the State Superintendent of Schools was investigating whether to revoke her teaching certificates. *Id.* ¶ 50; ECF No. 20-13. As of the filing of her Amended Complaint, Durstein had not received a decision from this investigation. ECF No. 20 ¶ 51.

The Amended Complaint includes five counts. Count One is a 42 U.S.C. § 1983 claim against Alexander for violating the First Amendment by coercing Durstein to terminate her Twitter account. ECF No. 20 ¶ 53–65. Count Two is a § 1983 claim against the Board of Education for its alleged custom of coercing employees to terminate their social media accounts. *Id.* ¶ 66–73. Count Three is a § 1983 claim against Alexander for violating the First Amendment by commanding Durstein not to speak to the press. *Id.* ¶ 74–82. Count Four is a § 1983 claim against the Board of Education for terminating Durstein's employment based on polices that violate the First Amendment. *Id.* ¶ 83–98. Count Five is a § 1983 claim seeking a declaratory judgment that the First Amendment bars the State Superintendent of Schools from revoking Durstein's teaching certificates based on her tweets. *Id.* ¶ 99–105.

The Court dismissed Counts Two and Five in December 2019. ECF No. 56. The Court dismissed Count Two because Durstein did not plead facts sufficient to show the Board of Education had a custom of coercing employees to terminate their social media accounts. *Id.* at 11–16. And the Court dismissed Count Five based on the *Younger* abstention doctrine because of the state's ongoing proceedings against Durstein to revoke her teaching certificates. *Id.* at 19–25. Because Count Five was the only claim against the Superintendent, the Court terminated him as a defendant.

Durstein now moves to file a Supplemental Complaint based on new factual developments. ECF No. 76. The Supplemental Complaint adds new allegations based on the state's decision to end its investigation of Durstein and not revoke her teaching certificates. *Id.* ¶¶ 44, 46, 120. The Supplemental Complaint also alleges the Board of Education failed to hire Durstein for 24 separate teaching positions in the summer of 2019. *Id.* ¶¶ 148–51. Based on these new allegations, the Supplemental Complaint attempts to revise and reinstate Count Five against the Superintendent

now that the state will not revoke Durstein's teaching certificates. *Id.* ¶¶ 120–37. Specifically, Durstein narrows Count Five to a facial challenge to the "immorality" provision of West Virginia Code § 18A-3-6. *Id.* Durstein also pleads a new Count Six against the Board of Education based on the Board's failure to rehire her. *Id.* ¶¶ 138–54.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(d) allows a party to "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Courts evaluate Rule 15(d) motions under the same standard as motions to amend pleadings under Rule 15(a). Under Rule 15(a), "a court should freely give leave [to amend] when justice so requires." A court should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Therefore, a court may deny a proposed amended or supplemental complaint as futile if it cannot survive a motion to dismiss for failure to state a claim. *Id.*

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.*

### III. DISCUSSION

**A. The alleged agreement between Durstein and the Superintendent does not warrant denying leave to file the Supplemental Complaint.**

The Superintendent argues the Court should deny leave to file the Supplemental Complaint based on prejudice to the Superintendent. ECF No. 83. Specifically, the Superintendent claims that he and Durstein formally agreed that Durstein would dismiss all claims against the Superintendent if he ended the proceedings to revoke Durstein's teaching certificates. *Id.* at 9–11. This alleged agreement was emailed by Durstein's counsel to the Superintendent's counsel on June 12, 2019. ECF No. 83-1. Because the Superintendent ended the certificate revocation proceedings, he argues Durstein's attempt to revive her claim against the Superintendent is a breach of their agreement and therefore prejudicial. ECF No. 83 at 9–11. In response, Durstein argues the June 12, 2019 communication does not constitute an enforceable agreement because the correspondence acknowledged a need for further negotiations. ECF No. 90 at 11–12. Durstein's counsel also filed a declaration disputing the Superintendent's interpretation of their communications. ECF No. 89.

The disagreement between the Superintendent and Durstein is a fact-based contract dispute. While the Superintendent characterizes Durstein's conduct as a straightforward breach of contract, Durstein raises significant questions regarding the content and enforceability of their June 12, 2019 communication. Durstein also presents many communications prior and subsequent to the June 12 email that contextualize and potentially clarify its meaning. ECF Nos. 89, 90 at 15–18. Because a significant factual dispute exists regarding the meaning and enforceability of the parties' alleged agreement, the Court cannot conclude now whether any breach occurred and, consequently, whether granting Durstein's Motion to file the Supplemental Complaint is

prejudicial to the Superintendent. The Superintendent may raise a contract-based defense in his answer to the Supplemental Complaint, but the Court cannot resolve this factual dispute at this stage of the litigation. Denying Durstein's Motion based on prejudice to the Superintendent would therefore be improper.

### B. Durstein's new "failure to hire" claim is not futile.

Durstein's proposed Count Six is a 42 U.S.C. § 1983 claim based on the Board of Education's refusal to hire her because of her constitutionally protected speech. ECF No. 76-1 ¶¶ 138–54. She alleges that she applied for 24 different positions with Cabell County Schools in the summer of 2019. *Id.* ¶¶ 149–51. She alleges that despite being qualified, she never received an interview, even for critically-needed substitute teaching positions. *Id.* She claims this withholding of employment reasonably implies that the Superintendent or the Board of Education acted on a policy to "blackball" her from employment in the school district as a consequence of her protected off-duty speech and this lawsuit. *Id.* ¶¶ 150–51. She seeks injunctive relief compelling Cabell County Schools to employ her and damages exceeding $100,000. *Id.* ¶ 153. The Board of Education argues the Court should not allow Durstein to introduce this claim because it would not withstand a motion to dismiss. ECF No. 84 at 4–7.

When a public employee sues a government employer for First Amendment retaliation under § 1983, the employee must prove: (1) she was speaking as a citizen on a matter of public concern (and not as an employee on a matter of personal interest); (2) her interest in speaking on the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) her speech was a substantial factor in the employer's adverse employment decision. *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998) (citation omitted). To hold a local government entity liable for such a violation, the plaintiff "must show

that the execution of a policy or custom of the municipality caused the violation." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citation omitted). A local government entity can develop a policy or custom through the decisions of a person with final policymaking authority and through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted).

Durstein's claim makes a plausible showing under the three-element retaliation standard. In its Memorandum Opinion and Order on the defendants' motions to dismiss, the Court explained that Durstein spoke as a private citizen when she voiced her own opinions on her personal social media account while at home using her own electronic devices. ECF No. 56 at 7. And Durstein's tweets on the alleged culprit of two public shootings, immigration, relations between Muslims and non-Muslims, and the actions of President Obama were quintessentially matters of public concern. *Id.* The Court also explained that, based on the facts alleged in the Amended Complaint, the suppression of Durstein's speech seemed to do little to serve the orderly operation of the school. *Id.* at 7, 10. Durstein has also plausibly alleged in her Supplemental Complaint that her speech was a substantial factor in the Board of Education's refusal to hire her. She claims her 17 years of teaching experience qualified her for the 24 positions she applied to. ECF No. 76-1 ¶¶ 9, 70, 76. And despite an official policy explaining a "critical need for substitute teachers" in areas she was qualified for, the Board still did not hire her. *Id.* ¶ 69; ECF No. 76-13. One can reasonably infer that the Board had knowledge of Durstein's speech as a result of terminating her and being a defendant in this suit. And the rejection of Durstein's applications came within a few years of her termination as she persisted in this suit against the Board. Together, these allegations raise the reasonable inference that Durstein's speech was a substantial factor in the Board of Education's refusal to hire her.

The Supplemental Complaint also makes a plausible showing that the execution of a policy or custom of the Board caused the violation. First, West Virginia law provides that the employment of teachers and other professional personnel "shall be made by the board only upon nomination and recommendation of the superintendent." W. Va. Code § 18A-2-1(a); ECF No. 76-1 ¶¶ 58–64. And "[o]rdinarily, [courts] presume that public officials have properly discharged their official duties." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). Therefore, because the Superintendent has final policymaking authority over personnel decisions, one can reasonably infer that he decided not to recommend Durstein for the 24 separate teaching positions, and his decisions plausibly constitute a policy or custom. *See Lytle*, 326 F.3d at 471. Second, the 24 separate rejections of Durstein's applications plausibly show a practice of denying employment that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Id.*; ECF No. 76-1 ¶¶ 150–51. Durstein has thus adequately pleaded a basis for the Board's liability under this theory as well.

Count Six therefore states a plausible claim, and filing a Supplemental Complaint is proper because the new allegations contained in Count Six occurred after the filing of Durstein's Amended Complaint in February 2019. The Board argues that pleading both a wrongful termination claim and a failure to hire claim will result in a duplicative recovery. ECF No. 85 at 10. But these two claims are distinct, and the Federal Rules expressly encourage a party to join "as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). The possibility of overlapping damages is not a concern at the pleading stage.

## IV. CONCLUSION

The Court therefore **GRANTS** Durstein's Motion for Leave to File Supplemental Complaint, ECF No. 76. Count Five as pleaded in the Supplemental Complaint is reinstated against the State Superintendent, and Count Six is now operative against the Board of Education. The

Court **DIRECTS** the Clerk to file the Supplemental Complaint, ECF No. 76-1, and rename the State Superintendent as a defendant in this suit. The Court further **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to all counsel of record.

      ENTER:     August 14, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE