## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

MARY DURSTEIN,

                Plaintiff,

v.                                    CIVIL ACTION NO.  3:19-0029

TODD ALEXANDER;
BOARD OF EDUCATION, CABELL COUNTY SCHOOLS;
STATE SUPERINTENDENT OF SCHOOLS, WEST VIRGINIA
DEPARTMENT OF EDUCATION,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Defendant State Superintendent of Schools's Motion to Dismiss Supplemental Complaint. ECF No. 102. For the reasons below, the Court **GRANTS** the Motion.

### I. BACKGROUND

In her Amended Complaint, Mary Durstein alleges the following facts. Am. Compl., ECF No. 20. Durstein worked as a full-time teacher for Cabell County Schools from November 2001 until her termination on March 6, 2017. *Id.* at ¶ 4. During the 2016–2017 school year, Durstein taught World Studies at Huntington High School. *Id.* at ¶ 5. She operated a Twitter account viewable by the public and often posted about political issues. *Id.* at ¶¶ 17–18. A journalism student at Marshall University gathered several of Durstein's tweets, and the student or a friend of the student shared the tweets with Cabell County Schools and local news organizations. *Id.* at ¶ 23.

On January 9, 2017, Huntington High School Principal Jody Cunningham called Durstein into his office to meet with him and Todd Alexander, an assistant superintendent for Cabell County

Schools. *Id.* at ¶¶ 21–22, 6. At this meeting, Alexander and Cunningham discussed three of Durstein's tweets with her. *Id.* at ¶ 24. The first, posted on July 16, 2015, is a retweet of conservative commentator Ann Coulter containing a photograph of two men and five women, some of whom are wearing hijabs. *Id.* at ¶ 25; ECF No. 20-1. One of the men in the photo is Mohammad Youssuf Abdulazeez, who had opened fire on two military installations in Tennessee. Am. Compl. ¶ 25. A caption above the photo reads "Deport them." ECF No. 20-1. The second tweet, also from July 16, 2015, states "Who cares if we offend Muslims at least they keep their heads on tact. They're the enemy!" Am. Compl. ¶ 26; ECF No. 20-2. In the third tweet, posted on May 28, 2016, Durstein responds "Exactly !!!!!!!!!" to a meme calling President Barack Obama a "Muslim douchebag." Am. Compl. ¶ 28; ECF No. 20-3.

On January 24, 2017, the Superintendent of Cabell County Schools suspended Durstein without pay. Am. Compl. ¶ 42. On March 6, 2017, the Board of Education of Cabell County Schools voted to terminate Durstein. *Id.* at ¶ 45; ECF No. 20-12. Durstein appealed, but the West Virginia Education and State Grievance Board upheld her termination on September 22, 2017. Am. Compl. ¶ 46.

On December 11, 2017, Durstein received notice that the State Superintendent of Schools was investigating whether to revoke her teaching certificates. *Id.* at ¶ 50; ECF No. 20-13. The letter listed the findings of the Cabell County Schools' investigation and stated that the State Superintendent would "be determining whether a hearing is warranted under West Virginia Code § 18A-3-6 for immorality with a rational nexus to your teaching responsibilities." ECF No. 20-13. Additionally, the letter indicated that there was "no timetable for completion of investigations." *Id.* Finally, the letter stated, "[i]n the meantime, should you seek employment in the public school system, it is your responsibility to disclose the fact of our investigation to prospective employers

regardless of whether their application or interview process calls for such disclosure." *Id.* As of the filing of her Amended Complaint, Durstein had not received a decision from this investigation. Am. Compl. ¶ 51.

Durstein filed her Complaint on January 8, 2019, and her Amended Complaint on February 28, 2019. ECF Nos. 1, 20. On December 13, 2019, the Court entered a Memorandum Opinion and Order on the State Superintendent's Motion to Dismiss Durstein's Amended Complaint. ECF No. 56, at 19–25. The Amended Complaint asked the Court to make the following declaratory judgments: (1) the First Amendment bars the State Superintendent of Schools from revoking or suspending Durstein's teaching certificates based on her tweets; (2) the First Amendment bars the State Superintendent from applying the "immorality" provision of W.Va. Code § 18A-3-6 to her tweets as a ground for revoking or suspending her teaching certificates; and (3) the "immorality" provision of W. Va. Code § 18A-3-6 violates the First Amendment on its face. Am. Compl. ¶¶ 99–105. The State Superintendent moved to dismiss the claims arguing that the *Younger* abstention doctrine applied and that Durstein lacked standing. ECF No. 24.

In its Memorandum and Order, the Court found that the State Superintendent's proceeding against Durstein fit into the categories of cases to which *Younger* abstention applies. ECF No. 56 at 20–21 (citing *Younger v. Harris*, 401 U.S. 37 (1971) and *Sprint Commc'ns, Inc. v Jacobs*, 571 U.S. 69 (2013)). Additionally, the Court found that the "*Middlesex* factors" were satisfied. *Id.* at 22–25 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). Accordingly, the Court granted the State Superintendent's Motion. *Id.* at 25.

On January 10, 2020, Durstein moved under Rule 59(e) of the Federal Rules of Civil Procedure to vacate the Court's order dismissing the State Superintendent, claiming that on January 9, 2020, the State Superintendent had formally closed his investigation into her and thus

the Court's grounds for abstention were eliminated. ECF Nos. 57 & 58. The Parties ultimately agreed that resolution of the Motion to Vacate was not necessary for Durstein to move to file a supplemental complaint stating a facial challenge against the State Superintendent. *See* ECF No. 66. Accordingly, the Court entered an order denying the Motion to Vacate as moot. *Id.* Motions for leave to file a supplemental complaint were filed on March 17, 2020 and April 16, 2020. ECF Nos. 68 & 76.[1] After briefing, the Court granted Durstein leave to file her Supplemental Complaint. ECF No. 94.

The Supplemental Complaint was filed on August 14, 2020. Suppl. Compl., ECF No. 95. Together, the Amended and Supplemental Complaints assert 6 counts. Counts One, Two, Three, Four, and Six are irrelevant to this Motion, as they are asserted against either Defendant Alexander or Defendant Board of Education. The Supplemental Complaint adds facts relating to the investigation into her teaching license, and reasserts a revised Count Five against the State Superintendent. Suppl. Compl.

Durstein claims that the State Superintendent's investigation had a significant impact on her "job prospects" in the state of West Virginia. She claims that during the investigation she applied for an open teaching position in Logan County, West Virginia, and was told by the Personnel Director of Logan County Schools, "You will never get hired in this county. You are under investigation by the Department of Education." *Id.* at ¶¶ 8–9. Additionally, she alleges that she applied to a multitude[2] of other teaching positions in West Virginia but failed to receive any interviews.[3]

---

[1] Durstein voluntarily withdrew without prejudice ECF No. 68 to correct alleged defects asserted by defendant Board of Education. ECF No. 75.

[2] This includes 24 posted positions in Cabell County. *See* Suppl. Compl. ¶¶ 75–76. Of note, "Cabell Schools did not inform Durstein of any reason for deciding not to interview her or hire her." *Id.* at 79.

[3] Durstein also cites to the declaration of Mr. Greg Webb who stated that, based on his experience in school administration, "[a]n applicant for a teaching position who was under investigation by the West Virginia

-4-

Durstein notes that the State Superintendent's January 9, 2020 letter "does not articulate any reason for the Superintendent's decision to close his investigation, and provides no assurance that Durstein does not risk another investigation by returning to engaging with others on social medial about public controversies while at home." *Id.* at ¶¶ 36. Durstein avers that she has avoided engaging in expressive activity for fear that State Superintendent may take action against her license. *See id*. at ¶¶ 33–35, 44–53.

Moreover, in addition to the letter stating that Durstein had an obligation to disclose the existence of the ongoing investigation to any prospective employer, she asserts that the "pendency of the Superintendent's investigation was noted on the West Virginia Dept. of Education's online records about Durstein, which human resources officers of West Virginia school districts typically would consult when considering her application to teach." *Id.* at ¶¶ 13–14. Durstein ultimately secured employment as a substitute teacher in Ohio. *Id.* at ¶ 17.

In the Supplemental Complaint, Durstein drops two of her asserted grounds for a declaratory judgment but "continues to seek a declaratory judgment that the provision of [W.Va.] Code § 18A-3-6 that allows the Superintendent to revoke or suspend a teaching certificate for 'immorality' violates the First Amendment on its face." Suppl. Compl. ¶ 122.

Specifically, Durstein claims (1) § 18A-3-6 "contains no standards—on its face or as authoritatively interpreted by West Virginia's highest court—to confine the Superintendent's threshold determination of which speech can or cannot qualify as 'immoral'"; (2) it "allows the Superintendent to engage in viewpoint discrimination in violation of the First Amendment"; and (3) it "coerces licensed teachers to refrain from engaging in certain speech that they have a right to express under the First Amendment . . . ." *Id.* at ¶¶ 129, 131, 135. Additionally, Durstein argues

---

Superintendent of Education would be highly unlikely to land the position." ECF No. 36-1, at ¶ 6.

that the "rational nexus" condition in the statute does not sufficiently narrow the Superintendent's discretion in a way that saves the statute from constitutional infirmity. *Id.* at ¶¶ 132–34.

On September 21, 2020, the State Superintendent filed a Motion to Dismiss the Supplemental Complaint. ECF No. 102. In its Motion, the State Superintendent argues that the claim against the State Superintendent must be dismissed for want of subject matter jurisdiction, because the Plaintiff "fails to meet the case or controversy requirements of Article III, § 2 of the United States Constitution." *Id.* at 1. In addition, or in the alternative, it argues that "Plaintiff's challenge to West Virginia Code § 18A-3-6 cannot be sustained because the statute does not regulate speech on its face and has not been applied to her speech or the speech of anyone else so as to provide this Court with a factual context in which to adjudicate its constitutionality under the First Amendment." *Id.* at 1–2.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.*

## III. DISCUSSION

Speech regulating laws can be found facially unconstitutional using two different doctrines: overbreadth and vagueness. The overbreadth doctrine invalidates statutes that "prohibit a

substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). Essentially, a law that is overbroad violates the First Amendment because "the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *Id.* A plaintiff, however, can only facially challenge a law as overbroad in a limited number of circumstances. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612–13 (1973). Specifically, such challenges are traditionally permitted only where the (1) the statute regulates pure speech, (2) where the statute, because of its "broad sweep, might result in burdening innocent associations," (3) where the statute "purport[s] to regulate the time, place, and manner of expressive or communicative conduct," and (4) when a statute leaves an official with unbridled discretion, "resulting in virtually unreviewable prior restraints on First Amendment rights." *Id.*

The State Superintendent argues that the law Durstein challenges does not fall within one of these four categories, and thus, is not subject to a facial challenge. Mem. of Law 4–8, ECF No. 103. This argument, while accurate as to a facial challenge based on overbreadth, miscategorizes Durstein's claim. Durstein has not challenged § 18A-3-6 as "overbroad." Instead, she is challenging the law as unconstitutionally vague.

The prohibition against vague laws "is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019). A law is impermissibly vague if it fails to "give a person of ordinary intelligence adequate notice of what conduct is prohibited" or if it fails to "include sufficient standards to prevent arbitrary and discriminatory enforcement." *Id.* The degree of vagueness permitted depends on the type of statute and the constitutional consequences of the vagueness. *See id.* For example, "[l]ess clarity is required in purely civil statutes because the 'consequences of imprecision are

qualitatively less severe.'" *Id.* (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)). However, "[w]hen First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001).

Overall, facial challenges are disfavored by the courts. *See Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998). For vagueness challenges outside of the First Amendment, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Ests.*, 455 U.S. at 494–95 (1982). In the context of the First Amendment, however, "the ordinance need not be vague in all applications if it reaches a substantial amount of constitutionally protected conduct." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)).

To determine whether a law, rule, or ordinance reaches a substantial amount of protected conduct, the relevant inquiry is whether it "clearly implicates free speech rights." *Diamond S.J. Enter., Inc. v. City of San Jose*, 430 F. Supp. 3d 637, 645 (N.D. Cal. 2019) (quoting *Cal. Tchrs. Ass'n*, 271 F.3d at 1149). A law clearly implicates free speech rights when "its chilling effect on constitutionally protected conduct is 'both real and substantial.'" *Sibley v. Watches*, No. 19-CV-6517-FPG, 2020 WL 6721467, at *9 (W.D.N.Y. Nov. 16, 2020) (quoting *Farrell v. Burke*, 449 F.3d 470, 496 (2d Cir. 2006)).

Here, while "immorality" under § 18A-3-6, certainly *may* implicate constitutionally protected free speech rights, the Court finds that Durstein has failed to show a real and substantial chilling effect. *See Guam Fed'n of Tchrs. v. Cruz*, No. CV 15-00003, 2016 WL 1383477 (D. Guam Apr. 7, 2016) (dismissing facial challenge to the Guam Rules Governing the Standards of

Profession Conduct for Guam Educators, which could be applied to strip teachers of their teaching certificates for "immoral conduct," because the "real harm is to privacy rights," rather than free speech); *Sibley*, 2020 WL 6721467, at *13.[4]

West Virginia Code § 18A-3-6 reads, in pertinent part,

> The State Superintendent may, after 10 days' notice and upon proper evidence, revoke or suspend the certificates of any teacher for any of the following causes: Intemperance; untruthfulness; cruelty; immorality; the conviction of a felony or a guilty plea or a plea of no contest to a felony charge; the conviction, guilty plea or plea of no contest to any charge involving sexual misconduct with a minor or a student; or for using fraudulent, unapproved or insufficient credit to obtain the certificates: Provided, That in order for any conduct of a teacher involving intemperance; cruelty; immorality; or using fraudulent, unapproved or insufficient credit to obtain the certificates to constitute grounds for the revocation of the certificates of the teacher, there must be a rational nexus between the conduct of the teacher and the performance of his or her job. . . .

"Immorality" under this section does not expressly target expression. "Immorality" can take numerous forms. There are many examples of immoral conduct with a nexus to a teacher's job that do not implicate the First Amendment: a teacher engaging in inappropriate sexual contact with children,[5] a teacher engaging in public sexual conduct,[6] a teacher conspiring to distribute drugs,[7] and teachers using drugs or drinking alcohol with students,[8] to name a few.

---

[4] In *Sibley*, the court dismissed a facial claim to a New York handgun licensure law that allowed the issuer to deny a permit based on lack of "good moral character." 2020 WL 6721467, at *13. The Court reasoned that the plaintiff made "no allegations or argument that the 'good moral character' standard would chill anyone's protected conduct but his own." *Id.*

[5] *See, e.g.*, *Kilpatrick v. Wright*, 437 F. Supp. 397 (M.D. Ala. 1977) (teacher made sexual advances toward students); *In re Appeal of Morrill.*, 765 A.2d 699 (N.H. 2001) (teacher had inappropriate sexual interactions with children); Kim Kilbride, *South Bend Adams Teacher and Volunteer Coach Fired for 'Immorality,'* South Bend Tribune (Dec. 17, 2014), https://www.southbendtribune.com/news/education/south-bend-adams-teacher-fired-for-immorality/article_c2cf8512-ef47-5414-b8a4-f4f0869f3787.html (teacher engaged in inappropriate sexual communications with a student).

[6] *See, e.g.*, *San Diego Unified Sch. Dist. v. Comm'n on Pro. Competence*, 194 Cal. App. 4th 1454 (2011) (teacher posted "an ad soliciting sex that contained graphic photos of his genitalia and anus, as well as obscene written text, that was discovered by a parent and reported to the District"); Patrick Cloonan, *MASD Teacher Fired for Immorality to Get Appeal Hearing*, Trib Live (Apr. 14, 2011), https://archive.triblive.com/local/local-news/masd-teacher-fired-for-immorality-to-get-appeal-hearing/ (teacher had sex in elementary school classrooms).

[7] *See, e.g.*, *Alford v. Ingram*, 931 F. Supp. 768 (M.D. Ala. 1996) (teacher conspired to distribute cocaine).

[8] *See, e.g.*, *Bd. of Educ. of Hopkins Cty. v. Wood*, 717 S.W.2d 837 (Ky. 1986) (two teachers smoked marijuana with 15-year-old students); Carmen McCollum, *Hanover Teacher 'Fired for Immorality,'* NWI Times (Oct. 23, 2013),

In *Guam Federation of Teachers v. Cruz*, the court recognized the legitimacy of teachers' concerns about laws that allow teachers to be fired or stripped of the licenses for "immoral" conduct or behavior. 2016 WL 1383477, at *6.

> The law reporters are littered with cases where school boards fired teachers for "immoral" conduct that supposedly set a bad example for students. Common grounds for discipline have included sexual misconduct, same-sex orientation, pregnancy out of wedlock, and alcohol and drug abuse.[9]

*Id.* (internal citations omitted). Nevertheless, "facial challenges are disfavored, because they rest on speculation, run counter to the principle of judicial restraint, and presume, contrary to the democratic process, that the state will not implement the law in a manner consistent with the Constitution." *Id.* (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)).

Durstein fails to establish that this law—which the State Superintendent points out has been on the books since 1908—has had, or is likely to have, a substantial chilling effect on any speech, except perhaps her own. *See* Mem. of Law 7–8. Although it is conceivable that § 18A-3-6 may chill some First Amendment speech, the chilling effect is not so substantial to allow for a facial challenge.[10]

---

https://www.nwitimes.com/news/local/lake/cedar-lake/hanover-teacher-fired-for-immorality/article_8a5b52c5-c349-5a65-bc7c-2179743901fb.html (teacher took students to a strip club and let them drink alcohol in his home).

[9] *See* John E. Rumel, *Beyond Nexus: A Framework for Evaluating K-12 Teacher Off-Duty Conduct and Speech in Adverse Employment and Licensure Proceedings*, 83 U. Cin. L. Rev. 685 (2015).

[10] Durstein argues that this Court should allow a facial challenge based on the Supreme Court's recent decision in *Iancu v. Brunetti,* in which the Court invalidated the Lanham Act's prohibition on the registration of "immoral" trademarks. 139 S. Ct. 2294 (2019). The *Iancu* Court found that this prohibition was impermissible viewpoint discrimination. *Id.* at 2297. *Iancu*, however, not instructive here. The Lanham Act, which regulates the registration of trademarks, necessarily regulates expression. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015) ("The principle underlying trademark protection is that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others."); *Matal v. Tam*, 137 S. Ct. 1744, 1760 (2017) ("Trademarks are private, not government, speech.").

As written, the law is subject to attack on an as applied basis—a basis which Durstein willingly omitted from her Supplemental Complaint. Suppl. Compl. ¶ 120.[11] Because the Court finds that § 18A-3-6 cannot be challenged facially, Durstein's claim against the State Superintendent must be dismissed.[12]

## IV. CONCLUSION

For these reasons, the Court **GRANTS** State Superintendent's Motion to Dismiss. ECF No. 102. The State Superintendent is **DISMISSED** from this action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 19, 2021

_____

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[11] "Because the Superintendent has closed his investigation of Durstein without taking action against her teaching certificates, Durstein no longer seeks a declaratory judgment on the grounds that she asserted in paragraphs 102 and 103 of her amended complaint: (a) that the First Amendment bars defendant Superintendent from revoking or suspending her teaching certificates based on the content of her five tweets, or (b) that the "immorality" provision of [W. Va.] Code § 18A-3-6 violates the First Amendment as applied to the content and context of Durstein's five tweets."

[12] Accordingly, the Court declines to address the State Superintendent's argument that Durstein lacks an injury in fact.