## In the United States District Court
## For the Southern District of West Virginia
## Huntington (Division 3)

|  |  |  |
|---|---|---|
| | ( | |
| | ( | **No. 3:19-cv-00029** |
| **MARY DURSTEIN,** | ( | |
| | ( | |
| **Plaintiff,** | ( | **Memorandum in support of motion of** |
| | ( | **plaintiff Durstein for protective order** |
| | ( | **re reconvened depositions of** |
| | ( | **Dr. Majed Khader and Yazan Khader** |
| **v.** | ( | **and to compel their appearance** |
| | ( | **without bystanders** |
| | ( | |
| **TODD ALEXANDER,** *et al.,* | ( | |
| | ( | |
| **Defendants.** | ( | |

The subpoenaed depositions of Marshall University Professor Dr. Majed Khader and his adult son, Yazan Khader, quickly became a fiasco. As Dr. Khader's deposition was set to begin, a fellow professor and a local neurologist suddenly appeared at the law office of Durstein's co-counsel Michael Bailey, and demanded to sit in on the depositions.

The fellow professor, Dr. Jamil Chaudri, and the neurologist, Dr. Ijaz Ahmad, belong to the Muslim Association of Huntington, as does Dr. Khader.

Durstein subpoenaed Dr. Khader to testify about two letters that Dr. Khader signed and addressed to two different Cabell Schools administrators. Drs. Chaudri and Ahmad insisted on being present for that testimony despite the objections of all counsel.

Durstein subpoenaed Yazan, an employed college graduate, to testify about his interaction with Durstein while he was a student at Huntington High School and she was a teacher. Drs. Chaudri, Ahmad, and Khader insisted on being present for Yazan's

testimony, also over counsel's objections. Yazan did not seek their presence, and repeatedly tried to assure his father, "It's all right, Dad; it's all right."

Counsel tried for hours to reach a compromise with the other three men. Counsel offered to provide them with prompt delivery of transcripts at no cost, as a substitute for sitting in on the live depositions. Counsel offered to live-stream the testimony through Zoom or Apple's Facetime, while the men sat in an office across the hall from the deposition room. They rejected all of those offers, either unconditionally or by imposing conditions unacceptable to counsel.

Counsel acquiesced to Dr. Khader attending his son's deposition, but only if Dr. Khader agreed not to speak or gesture, and only if he sat away from counsel table and away from the witness. Dr. Khader, however, insisted on sitting next to his son throughout Yazan's testimony, and vowed to speak in case "I don't like the answer" and to "elaborate on what he said."

The prolonged discussions devolved into outbursts, with Dr. Chaudri standing behind Mary Durstein as she was seated at counsel table, pointing at her back, and excitedly exclaiming, "She insulted Islam! She insulted Islam!" That put Mrs. Durstein in tears.

Obviously, the depositions could not proceed. Counsel agreed to seek the court's aid in reconvening the depositions. Here, Durstein seeks an order from this Court allowing the depositions of Dr. Khader and Yazan Khader to proceed without any bystanders present, and requiring the Khaders to appear to testify without bystanders.

**Background**

**1.  Parties.**

Mary Durstein is the sole plaintiff. The defendants are the Board of Education of Cabell County ("Cabell Schools") and Todd Alexander. The West Virginia Superintendent of Schools is a defendant, but the Court dismissed the claims against the Superintendent.

**2.  Crux of Durstein's claim.**

This motion pertains only to Durstein's claim against Cabell Schools for firing her. She was a full-time teacher there from 2001 until January, 2017, when a group of college-age adults culled five tweets and retweets from Durstein's personal Twitter account, sent them to local news media and to Cabell Schools, and spread them across Twitter and the internet. One of the tweets was a joke about Muslims; the others expressed disapproval of Muslims in terse, sometimes coarse, sometimes harsh terms. (*E.g.*, Exs. 1, 2, 3 to Am. Cmplt, ECF 20-1, 20-2, 20-3, not separately appended to this memor.)

Durstein had posted the tweets and retweets over an 18-month period on her own electronic devices, while at home, and when school was not in session.

Cabell Schools' superintendent described the tweets and retweets as exposing Durstein's "raw bigotry towards persons of the Islamic faith." (Ex. 11 to Am. Cmplt, ECF 20-12, not separately appended to this memor.)

The Cabell Board of Education convened a hearing on the superintendent's recommendation to fire Durstein, and the board voted 3-1 to fire her.

In this suit, Durstein claims that firing her violated the First Amendment. (Supp. Cmplt, ¶s 87-116, ECF 95.)

**3.  Durstein's testimony about Yazan Khader.**

In her hearing before the Cabell Board of Education and in a later hearing in the West Virginia Public Employee Grievance process, Durstein testified about Yazan Khader. Early in the spring semester of 2016, the principal of Huntington High School asked Durstein to be the faculty sponsor for the National Honor Society. (Excerpt from trnscrpt of hring before Cabell Bd. of Ed., pgs 109-113, a copy accompanies this memor. as **Ex. 31**.) [1]

Durstein agreed, and obtained a list of the students with the highest grade point averages for freshmen, sophomores, juniors, and seniors. She saw that one of the seniors had top grades that year and in prior years, but he had not been invited to join the National Honor Society. The student was Yazan Khader. (Excerpt from trnscrpt of June, 2017, griev. hring, pgs 64-66, a copy accompanies this memor. as **Ex. 32.**)

Durstein met with Yazan Khader, invited him to join the National Honor Society, and urged him to accept the invitation as he initially was reluctant. She explained that joining the society would aid his college admission application and be a source of pride for his parents. (Ex. 32 at pg. 65: 21-25 & pg. 66: 1-5.)

Durstein seeks Yazan's testimony about that brief experience and about experiences known to him about Mrs. Durstein's attitude toward Muslims at school.

---

[1]    The exhibits accompanying this memorandum start with number 31 because Durstein is trying to mark each exhibit filed in this lawsuit with a unique consecutive number. There were 29 prior exhibits.

**4.   Letter signed by Dr. Majed Khader.**

By coincidence, the signator of two letters highly critical of Durstein addressed separately to Cabell Schools' Director of Communications and to the President of the Cabell Board of Education was Dr. Majed Khader, Yazan's father.

Dr. Khader signed the letters as trustee of the Muslim Association of Huntington, dated January 17, 2017.

In the hearing before the Cabell Board of Education on whether to fire Durstein, the Board admitted as evidence the letter addressed to Cabell Schools' Director of Communications. (A copy of the letter addressed to Jedd Flowers accompanies this memor. as **Ex. 33**.)

Three months later, in the public employee grievance proceedings, the Cabell Board of Education introduced another letter signed by Dr. Khader that was identical in all respects to the first one, except that the second letter was addressed to the President of the Cabell Board. (A copy of the letter addressed to the Pres. of the Cabell Bd. accompanies this memor. as **Ex. 34**.)

Durstein wishes to explore with Dr. Khader the genesis of the letters and his awareness, either firsthand or by reputation, of Durstein's attitude toward Muslim students and faculty in Durstein's many years at Cabell Schools.

**5.   The fiasco of the attempted depositions of Dr. Khader and Yazan Khader.**

**A.   Drs. Chaudri and Ahmad suddenly appear for Dr. Khader's deposition.**

Dr. Khader and Yazan Khader were to appear via subpoena to be deposed on Tuesday, April 27, 2021, at the office of Durstein's counsel in Barboursville, Michael Bailey. Each witness was subpoenaed to appear at a different time, with Dr. Khader to appear first.

Shortly before the time for Dr. Khader to appear, a gentleman entered the first floor of the building containing Bailey's second-floor law office. Assuming that he was Dr. Khader, Durstein's co-counsel, David Marburger, met him on the first floor and offered to escort him upstairs for the deposition to take place in a conference room on the second floor.

But it turned out that the gentleman was not Dr. Khader, but was instead Dr. Jamil Chaudri, a professor of computer science at Marshall University. (His profile: https://www.marshall.edu/cecs/p-chaudri/ .)

Like Dr. Khader, Dr. Chaudri is a member of the Muslim Association of Huntington.

A few moments later, a second gentleman entered the first floor. He was not Dr. Khader either, but was instead Dr. Ijaz Ahmad, a neurologist who practices medicine in Huntington and also is a member of the Muslim Association of Huntington.

Drs. Chaudri and Ahmad insisted that they had a right to sit in on Dr. Khader's deposition.

Neither Dr. Chaudri nor Dr. Ahmad are attorneys, nor is Dr. Khader.

Dr. Khader arrived shortly after Dr. Ahmad had arrived, and said that he wanted both Dr. Chaudri and Dr. Ahmad to attend his deposition.

Until Drs. Chaudri and Ahmad had arrived, no one had notified the parties' counsel that Dr. Chaudri or Dr. Ahmad intended to sit in on Dr. Khader's deposition.

**B.  Counsel for the parties object, but try repeatedly to find an accommodation.**

Marburger told Drs. Chaudri, Ahmad, and Khader that Marburger objected to their attending Dr. Khader's deposition, but invited them to an upstairs office to see if an acceptable compromise could be reached.

Marburger offered to provide Drs. Chaudri and Ahmad with copies of the transcript of Dr. Khader's deposition at no fee, to be delivered within a day of Marburger's receipt of the transcript—as a substitute for attending live. They rejected that offer.

The discussion became prolonged and increasingly heated. Eventually, Durstein's co-counsel Michael Bailey entered the room and echoed Marburger's earlier objection to Drs. Chaudri and Ahmad sitting in on Dr. Khader's deposition.

Marburger offered to transmit via Facetime or Zoom a live video/audio feed of Dr. Khader's deposition to Drs. Chaudri and Ahmad while they sat in the room where the discussion was underway. Dr. Chaudri then advised that he knew Dr. Khader very well, and that, if Dr. Chaudri perceived from the video feed that Dr. Khader felt intimidated, Dr. Chaudri would enter the deposition room to object. Marburger and Bailey then withdrew the offer to provide a live video/audio feed.

Marburger then went to the deposition room and explained to Eric Salyers, counsel for defendant Cabell Schools, what was happening. Salyers agreed that the Drs. Chaudri and Ahmad should not be present during Dr. Khader's deposition.

### C. Yazan Khader arrives.

When Marburger returned to the room while Bailey was still discussing the matter with Drs. Chaudri and Ahmad, Yazen Khader arrived to be deposed. Yazen is an employed, articulate college graduate. He had limited time because of his work

responsibilities, so Marburger advised that he immediately would proceed with Yazan's deposition.

When Drs. Khader, Chaudri, and Ahmad insisted upon attending Yazan's deposition, Marburger and Bailey objected. Marburger escorted Yazan into the conference room to be deposed, where the court reporter, Eric Salyers, and plaintiff Mary Durstein were sitting at the conference table, waiting.

**D. The aborted depositions of the Khaders.**

Moments after Marburger and Yazan sat down across from each other at the conference room table, Drs. Chaudri, Ahmad, and Khader entered the room, and insisted upon observing Yazan's deposition.

Initially, counsel consented to Dr. Khader attending his son's deposition, but only if Dr. Khader sat away from counsel table and away from the witness. Dr. Khader refused. He walked across the room, sat down in a chair next to his son, clutched Yazan to his side, and insisted that he must sit next to his son throughout the deposition. That prompted more anguished discussion.

Yazan Khader did not insist that his father attend the deposition, and repeatedly tried to reassure his father that he need not be present, saying "It's all right, Dad; it's all right."

Standing immediately behind the seated Mary Durstein, Dr. Chaudri raised his voice, pointed at Mrs. Durstein's back, and excitedly exclaimed, "She insulted Islam! She insulted Islam!" Mrs. Durstein began to cry. (See Marburger declaration accompanying this memor. as **Ex. 35**.)

Counsel then decided to go on the record to let everyone explain their respective positions.  (A transcript accompanies this memor. as **Ex. 36**.)

What follows are excerpts from the transcript.

After acknowledging that Drs. Chaudri and Ahmad are not attorneys, Dr. Ahmad said, "We are just going to observe the deposition."[2]

Dr. Chaudri said that the effort to exclude them was sinister.

**Dr. Chaudri**:  [W]e want to sit there, because this is allowed. . . .  [O]nly criminals want to exclude witnesses. There is some sort of rat smell in this.[3]

Dr. Khader insisted that, while sitting in on his son's deposition, he would interject his own comments.

**Marburger**:  I have said I'm okay with his father, Dr. Khader, sitting in. I'm okay with that as long as there's no talking and no gesturing, and I don't expect there would be. Although Dr. Khader wants the right to speak during his son's deposition. I have expressed objection to that.[4]

**Dr. Khader**:  Yes, I would like to speak if my son answers questions. In case I don't like the answer or he doesn't know how to address the answer, I would like to speak.[5] . . . .

**Dr. Khader**:  I will wait until after my son speaks. I will wait until he finishes his statement, then I will elaborate on what he said.[6]

Dr. Chaudri acknowledged that, should he observe the deposition remotely from another room via Zoom or Facetime—as Marburger had offered—he would intervene if he detected from the video that Dr. Khader felt intimidated.

---

[2]    Trnscrpt at 4: 9-14, Ex. 36.
[3]    Trnscrpt at 6: 11-12, Ex. 36.

[4]    Trnscrpt at 6: 21-24; 7: 1, Ex. 36.

[5]    Trnscrpt at 7: 2-5, Ex. 36.

[6]    Trnscrpt at 7: 15-16, Ex. 36.

**Bailey**:  You said if you saw on his face, Dr. Khader's face that he was being intimidated, that's when you would intervene. That's how I understood it.

**Dr. Chaudri**: That is what I said. I said that would be a problem because he's put under pressure.[7]

Later, Marburger asked again if the controversy could be resolved by Drs. Chaudri and Ahmed observing the proceedings remotely on Facetime from another room. Both said "no," with Dr. Ahmad insisting upon "a physical presence."[8]

Marburger asked Dr. Khader if he would be more comfortable testifying if he had his own lawyer. Dr. Khader responded by saying that Marburger must pay the fees of any lawyer whom Dr. Khader would retain.

**Marburger**:  What if you had your own lawyer and you came to testify, would that give you the protection you need?

**Dr. Khader**:  If you pay for the lawyer, I'm willing.

**Marburger**:  Why would I have to pay for the lawyer?

**Dr. Khader**:  Then why should I come over here?

**Marburger**:  Because you've been subpoenaed.[9]

. . . .

**Dr. Khader**:  It's not my problem. You are asking me to come to this. That's why, if you are going to pay for it for me to come, you have to pay for it and I have to choose the lawyer and you have to pay for it.[10]

---

[7]      Trnscrpt at 9: 7-13, Ex. 36.

[8]      Trnscrpt at 13: 16-22, Ex. 36.

[9]      Trnscrpt at 10: 22-24; 11: 1-7, Ex. 36.

[10]      Trnscrpt at 11: 15-19, Ex. 36.

Eventually, everyone agreed to quit trying to break the logjam, and Marburger said that he intended to seek the court's aid in reconvening the depositions.

Marburger asked Yazan "if we have to reconvene the deposition, would you and your father be willing, without me having to send a subpoena to you, that you could obey whatever arrangement is made—you would comply; I don't mean 'obey.'"[11]

Dr. Khader interrupted before Yazan could respond, saying "I have to consult with law counsel before that, before doing anything, because it looks like this is serious"[12] He immediately added, "My son is a victim, and I'm a victim."[13]

Referring to Yazan and speaking to Marburger, Dr. Khader said, "If something happen to him as a consequence of coming over here, I will hold you responsible on everything" and "I will go to court and give my blood to risk my son."[14]

Marburger received no assurance that Dr. Khader would appear at a reconvened deposition.

## Argument

**1. This Court should bar Drs. Chaudri and Ahmed from attending reconvened depositions of Dr. Khader and Yazan Khader.**

### A. Members of the public have no right to attend a deposition over the parties' objections.

Under Rule 26, this Court may issue an order "designating the persons who may be present while the discovery is conducted." Fed.R.Civ.P. 26(c)(E).

---

[11]     Trnscrpt at 16: 15-19, Ex. 36.

[12]     Trnscrpt at 16: 20-22, Ex. 36.

[13]     Trnscrpt at 16: 24; 17: 1, Ex. 36.

[14]     Trnscrpt at 17: 18-21, Ex. 36.

Here, Drs. Chaudri and Ahmad have not been subpoenaed to testify. For purposes of this suit, they are members of the public who want to sit in on two depositions to be conducted in a civil suit to which they are not parties.

"Discovery rarely takes place in public," the United States Supreme Court unanimously observed. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n.10 (1984).

Pretrial "depositions . . . are not public components of a civil trial"; they were "not open to the public at common law" and "in general, they are conducted in private as a matter of modern practice." *Seattle Times*, 467 U.S. at 33.

"[I]t has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants." *Gannett Co. v. DePasquale*, 443 U.S. 368, 396 (1979) (Burger, C.J., concurring).

The 11th Circuit elaborated on the fundamentally private character of discovery. The court said:

> Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.
> . . . .
>
> If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe.

*U.S. v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *accord Haidon v. Town of Bloomfield*, No. 3:19-cv-119, 2021 WL 3124205 at *4-*5 (D. Conn. 2021).

Federal courts have not hesitated to exclude members of the public and the press from civil pretrial depositions when at least one of the parties objected to their presence. *E.g.*, *Kimberlin v. Quinlan*, 145 F.R.D. 1, 1-2 (D.D.C. 1992); *Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D. Va. 1994); *Adams v. Sharfstein*, No. CCB-11-3755, 2012 WL

2992172 at *2 (D. Md. 2012); *EEOC v. Orig. Honeybaked Ham Co.*, No. 11-cv-02560,

2012 WL 3472281 at *1 (D. Colo. 2012); *Melendres v. Arpaio*, No. CV-07-02513, 2009

WL 3489402 at *2 (D. Ariz. 2009); *Batt v. Kimberly-Clark Corp.*, No. 05-CV-0421,

2006 WL 1623657 at *3 (N.D. Okla. 2006).

Thus, "neither the public nor representatives of the press have a right to be

present at the taking of a deposition." 8A Wright & Miller, Fed. Prac. & Proc. Civ.

§ 2041.

**B. Good cause to exclude unwanted bystanders from a deposition is a low threshold.**

A protective order requires good cause under Rule 26(c). But the showing needed

to justify excluding a member of the public who seeks, over the parties' objections, to

attend a deposition in a private law office, is "a low hurdle to clear." *See Haidon*, 2021

WL 3124205 at *7.

Not only do nonparty bystanders have no right to attend, but they should justify

their attendance on some legally-recognized ground. *See Batt*, 2006 WL 1623657 at *3.

Some grounds that do not justify allowing bystanders to attend over a party's

objection:

• A pro-se plaintiff demanded that her nonparty daughter be allowed to attend

the deposition of the plaintiff because lawyers "want to intimidate" and "browbeat the

witness." *Adams*, 2012 WL 2992172 at *2 n.5.

• A plaintiff demanded that his nonparty wife be allowed to attend his deposition

to "comfort him." *Batt*, 2006 WL 1623657 at *2.

• A defendant company wanted a former employee, a nonparty former

supervisor, to attend the depositions of 17 women who accused him of sexually

harassing them in the workplace—to aid the defense and so that the former supervisor could observe firsthand testimony that might injure his reputation. *EEOC*, 2012 WL 3472281 at *2.

**C. This Court should exclude Drs. Chaudri and Ahmad from the reconvened depositions of Dr. Khader and Yazan Khader.**

The sudden presence of Drs. Chaudri and Ahmad at the Khader depositions, and their unyielding insistence upon remaining despite the parties' objections became an extraordinary disruption.

Dr. Chaudri's unpredictable and excited behavior that afternoon, confirmed here by declaration (Ex. 35) and the transcript, justifies excluding Dr. Chaudri. Dr. Ahmad did not try to dissuade or curtail Dr. Chaudri and, in a low-keyed way, joined Dr. Chaudri, which justifies excluding Dr. Ahmad as well.

Moreover, the prompt availability of a transcript of deposition testimony is enough to justify excluding demanding bystanders from the deposition in person, although Durstein withdraws her offer to provide the transcripts at no expense. *EEOC*, 2012 WL 3472281 at *2; *Melendres*, 2009 WL 3489402 at *2.

This Court, therefore, should order the reconvening of the depositions of Dr. Khader and Yazan Khader without the presence of Drs. Chaudri and Ahmad.

**2. This Court should exclude Dr. Khader from the reconvened deposition of Yazan Khader.**

Excluding potential deponents from attending each other's depositions is a bit different from excluding uninvolved members of the public, although a subpoenaed deponent is not guaranteed admission to another witness' deposition. *Bell ex rel. Estate of Bell v. Bd. of Ed.*, 225 F.R.D. 186, 196 (S.D. WVa. 2004); *see* 8A, Wright & Miller, Fed. Prac. & Proc. Civ. § 2113.

Durstein seeks to exclude Dr. Khader from attending his son's deposition—not to guard against any impact on Dr. Khader's own testimony—but to ensure that Dr. Khader does not disrupt his son's testimony, add his own commentary, or distract counsel.

Indeed, this Court recognized that a witness may be excluded from another witness' deposition upon showing that "they might act coercively or disruptively." *Bell*, 225 F.R.D. at 196.

Here, counsel had been willing to allow Dr. Khader to attend his son's deposition if Dr. Khader did not talk or gesture, and sat away from counsel table and the witness. But Dr. Khader rejected that offer. He insisted on sitting beside his son throughout the deposition, and repeatedly said that he would speak during Yazan's deposition in case "I don't like the answer or he doesn't know how to address the answer" or "to elaborate on what he said." (Trnscript at 7: 3-5, Ex. 36.)

Here, the facts described in this memorandum, confirmed by declaration and by the transcript, show that Dr. Khader "might act coercively or disruptively" at a reconvened deposition of Yazan Khader. *See Bell*, 225 F.R.D. at 196.

This Court, therefore, should issue an order barring Dr. Khader from attending the reconvened deposition of Yazan Khader.

### Conclusion

As members of the public, neither Dr. Chaudri nor Dr. Ahmad enjoy a right to sit in on the depositions of Yazan Khader and Dr. Khader.

Moreover, the facts confirmed by the accompanying declaration and transcript show that, absent an order from this Court, Drs. Chaudri and Ahmad present a high likelihood of disrupting the depositions of Dr. Khader and Yazan Khader should they be present at either. And Dr. Khader essentially has vowed to disrupt the deposition of his

son by volunteering his own remarks and by insisting on sitting at counsel table next to his son, if Dr. Khader were present during his son's testimony.

So, this Court should order that (a) Drs. Chaudri and Ahmad are excluded from reconvened depositions of both Dr. Khader and Yazan Khader, and (b) Dr. Khader is excluded from a reconvened deposition of Yazan Khader.

The Federal Rules of Civil Procedure "are designed to ensure that district courts remain firmly in control of those depositions . . . involving nonparties located in their districts." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs of Am., Inc.*, 444 F.3d 462, 468 (6th Cir. 2006).

Rule 37(a) authorizes a party to move to compel discovery from a subpoenaed nonparty. *E.g.*, *Aetna Cas. & Surety Co. v. Rodco Autobody*, 130 F.R.D. 2, 4 (D. Mass. 1990); *see* Rule 37(b)(1) (the court may order "a deponent to be sworn or to answer a question").

It seems that Dr. Khader may not readily appear at a reconvened deposition. So, Durstein asks that the Court include in its order a reminder that both Dr. Khader and Yazan are to appear at reconvened depositions scheduled with reasonable advance notice. (Copies of the subpoenas served upon the Khaders accompany this memorandum as **Exhibits 37 and 38**.)

Respectfully submitted,


/s Michael S. Bailey
Michael S. Bailey (W.Va. Bar No. 8507)
BAILEY LEGAL SERVICES PLLC
642 Main Street, Suite 201
P.O. Box 347
Barboursville, WV  25504
Tel:  304.736.0801
Fax:  304.736.0805
Email:  mbailey@baileylegalservices.com

*Counsel for Mary Durstein*

/s David Marburger
David Marburger
MARBURGER LAW LLC
14700 Detroit Avenue, Suite One
St. Charles Court
Cleveland, OH  44107
Tel:  216.930.0500
Email:  david@marburger-law.com

*Of Counsel for Mary Durstein*

<u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Plaintiff, Mary Durstein, served the foregoing memorandum and its accompanying exhibits by electronically filing a copy of the same with the Clerk of the Court using the CM/ECF system on this 16th day of January, 2022 to:

Kelli D. Talbott
Senior Deputy Attorney General
Office of the W. Virginia Attorney General
812 Quarrier Street, Second Floor
Charleston, W. Virginia  25301
Tel:  304.557.8989
Fax:  304.558.4509
Email:  kelli.d.talbott@wvago.gov

*Counsel for State Superintendent of
Schools, W. Virginia Dept. of Education*

Perry W. Oxley
David E. Rich
Eric D. Salyers
Oxley Rich Sammons
517 9th Street, P.O. Box 1704
Huntington, W. Virginia 25718-1704
Tel:  304.522.1138
Fax:  304.522.9528
Email: poxley@oxleylawwv.com
Email: drich@oxleylawwv.com
Email: esalyers@oxleylawwv.com

*Counsel for Todd Alexander &
Cabell County Board of Education*

And served via email to the following nonparties affected by this motion:

Dr. Jamil Chaudri:  chaudri@marshall.edu

Yazan Khader:  Khader5@marshall.edu

Dr. Majed Khader:  Khader@marshall.edu

Dr. Ijaz Ahmad:  bhervee2000@yahoo.com

/s David Marburger
David Marburger